[No. 38095-8-I.   Division One.   February 22, 1999.]
THE STATE OF WASHINGTON, *Respondent*, v. JASON BROWN, *Appellant*.

*Stella S. Buder* of *Washington Appellate Project*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Dennis J. Mc-Curdy, Deputy*, for respondent.

KENNEDY, C.J. — Joseph Palmer, aka Jason Brown, was convicted of third degree assault of a law enforcement officer who was performing official duties at the time of the assault. The trial court's "to convict" instruction required the State to prove beyond a reasonable doubt that Palmer knew that the victim was a law enforcement officer at the time of the assault. But it did not require the State to also prove that Palmer knew that the victim was performing official duties at the time of the assault.

Relying on *State v. Allen*, 67 Wn. App. 824, 840 P.2d 905 (1992), Palmer contends that knowledge that the victim was a law enforcement officer performing official duties at the time of the assault is an element of third degree assault as defined by RCW 9A.36.031(1)(g). We decline to follow *Allen*, and hold that a defendant's knowledge that the assault victim was a law enforcement officer performing official duties at the time of the assault is not a necessary element of the crime.[1] Accordingly, we affirm.

## FACTS

On March 10, 1995, as part of a "buy-bust" narcotics operation, Seattle Police Officer Greg Neubert positioned

---

[1] Our holding makes it unnecessary for us to reach Palmer's second contention, that the State did not present sufficient evidence to prove Palmer knew that Officer Neubert was performing his official duties at the time of the assault.

himself outside the McDonald's restaurant at Third Avenue and Pine Street in downtown Seattle. Officer Neubert was wearing a green hooded military field jacket. His badge hung on a necklace under his jacket. Officer Neubert wore the jacket to conceal his identity as a police officer.

Outside the McDonald's, Neubert asked a passerby if he was "down," meaning, "[D]o you have narcotics or can you get narcotics?" Report of Proceedings at 175. The man responded, "You're a cop." *Id.* Officer Neubert followed the passerby into the McDonald's and engaged in an argument over whether Neubert was a police officer. After this, Officer Neubert returned to his position in front of the restaurant.

Shortly thereafter, Palmer approached Officer Neubert and asked, "[W]hat are you looking for?" Report of Proceedings at 178. Officer Neubert asked Palmer if he was "down." Palmer answered, "Hell, yeah, I'm down. I got rock." *Id.* Officer Neubert asked for a "40," meaning .40 grams of rock cocaine with a street value of $40. Palmer told Officer Neubert to wait, and entered the McDonald's. Through a window, Officer Neubert watched Palmer remove an object from around his waistband. Officer Neubert watched Palmer then contact and converse with the passerby who had accused Officer Neubert of being a cop.

Palmer came out of the McDonald's and exchanged a white object wrapped in cellophane for $40 of police department "buy money." Palmer then reentered the McDonald's and Neubert gave a "good buy" signal to other police officers who were working with him on the buy-bust operation. After briefly inspecting the object, Officer Neubert suspected that it was "bunk," i.e., fake rock cocaine.

Because the buy-bust operation targeted a very confined and crowded area in and around the McDonald's, with lots of escape routes, Officer Neubert was requested to keep the suspect in view after the transaction, to assist the arrest team in making the arrest. Thus, Officer Neubert followed Palmer back into the McDonald's.

In the McDonald's, Officer Neubert spotted Palmer talk-

ing again with the same passerby who had accused Neubert of being a cop. Palmer spun around and faced Officer Neubert. At a loss for words, Neubert accused Palmer of selling him bunk. Palmer unzipped his jacket, reached inside, and started to remove what appeared to be a handgun. Officer Neubert stepped backward, and Palmer started to move slowly toward Neubert.

Officer Neubert opened his jacket, removed the service revolver concealed inside his jacket, and screamed, "Seattle Police, drop the gun, drop it, drop it[!]" Report of Proceedings at 202, 207, 573, 603. At this time, Officer Neubert's badge, which was attached to a necklace, was visible. Palmer continued to move slowly forward, holding what appeared to be a handgun. Officer Neubert again identified himself as a police officer and ordered Palmer to drop the gun. Palmer then pointed the object at Officer Neubert. Officer Neubert shot Palmer once in the chest to eliminate the apparent threat. An inspection after the shooting revealed that Palmer was brandishing a replica of a handgun. Laboratory tests determined that the object sold by Palmer to Officer Neubert was not a controlled substance.

The State charged Palmer by information with a violation of the Uniform Controlled Substance Act and second degree assault. The State later amended the information to charge Palmer with third degree assault, in violation of RCW 9A.36.031(1)(g), instead of second degree assault. During trial, the State again amended the information to conform with recent case law requiring the State to prove that the defendant knew the victim was a law enforcement officer.

The court instructed the jury that to convict Palmer of third degree assault, the State must prove the following elements beyond a reasonable doubt:

(1)   That on or about the 10th day of March, 1995, the defendant assaulted Greg Neubert;

(2)   That the defendant knew at the time of the assault that Greg Neubert was a law enforcement officer;

(3)   That at the time of the assault Greg Neubert was a

law enforcement officer or other employee of a law enforcement agency who was performing his official duties; and

(4)   That the acts occurred in the State of Washington.

Instruction 14, Clerk's Papers at 85. The jury found Palmer guilty of both counts. The trial court sentenced Palmer within the standard range. Palmer appeals his third degree assault conviction.

## DISCUSSION

Palmer contends that the State must prove not only that the defendant knew at the time of the assault that the victim was a police officer, but also that the defendant knew that the officer was "performing his or her official duties" at the time of the assault. The State agrees that it must prove that the defendant knew that the victim was a law enforcement officer at the time of the assault, but contends that it is not required to prove that the defendant knew the police officer was performing official duties at the time of the assault.

■ Although Palmer failed to object to Instruction 14 at the time of trial, a "to convict" instruction that omits an essential element of the crime is an error of a constitutional magnitude. *State v. Eastmond*, 129 Wn.2d 497, 502, 919 P.2d 577 (1996). Therefore, Palmer may challenge the "to convict" instruction for the first time on appeal. *Id.*

(1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:

. . . .

(g) Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault[.]

RCW 9A.36.031(1)(g). Although knowledge that the victim is a law enforcement officer performing official duties is not a statutory element of the crime, Court of Appeals Divi-

sions One and Three have previously held that the defendant's "knowledge of the victim's status as a police officer performing official duties is a required element of third degree assault under RCW 9A.36.031(1)(g)." *State v. Tunney*, 77 Wn. App. 929, 932, 895 P.2d 13 (1995), *aff'd on other grounds*, 129 Wn.2d 336, 917 P.2d 95 (1996); *State v. Allen*, 67 Wn. App. at 826-27.

In *Allen*, Division Three held that "one of the elements to be proven beyond a reasonable doubt was the defendant's knowledge the victim of the assault was a law enforcement officer engaged in performing his official duties." *Id.* at 828. In its analysis, the *Allen* court noted that "the crime of assault requires knowing, purposeful conduct, and where 'the definition of a crime includes a particular result as well as an act, the mental element relates to the result as well as the act.' " *Tunney*, 77 Wn. App. at 931 (quoting *Allen*, 67 Wn. App. at 826). "The circumstance or result described by RCW 9A.36.031(1)(g) is the assault of a law enforcement officer *performing his duties at the time of the assault*." *Allen*, 67 Wn. App. at 827 (emphasis added). In support of this conclusion, the *Allen* court reasoned:

> "The distinctions now drawn between various kinds of crimes in terms of their seriousness, as reflected by the punishments provided for them, would lose much of their significance if an intent to cause any one specific type of harm would suffice for conviction as to any other type of harm which is criminal when intentionally caused."

*Allen*, 67 Wn. App. at 826 (quoting WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., CRIMINAL LAW § 34, at 243 (1972)).

In *Tunney*, the State argued that the *Allen* court based its decision on faulty reasoning. Division One rejected the State's argument and adopted the *Allen* court's reasoning: "We agree with the *Allen* court's analysis and will apply the holding to the present case." *Tunney*, 77 Wn. App. at 932.

The Supreme Court, upon accepting review of *Tunney*,

did not consider the issue of whether the State must prove the defendant knew the victim was a law enforcement officer performing his duties at the time of the assault:

> The issue of whether knowledge the victim is a police officer is an essential element of the crime is not before us. Assuming knowledge the victim is a police officer is an essential element of the crime, the issue is whether the information is constitutionally defective because that element was omitted.

*Tunney*, 129 Wn.2d at 339 (citation and footnote omitted). The court, however, did question the reasoning underlying the *Allen* and *Tunney* decisions in a footnote:

> Commentators have pointed out that this aspect of *Allen* (and not *Tunney*) is questionable because the mental element for assault is the intent to commit a battery or to create apprehension of harm, not the intent to accomplish some further goal. *See* 13A SETH A. FINE, WASH. PRAC., *Criminal Law* § 404 (Supp. 1996). Federal and state court decisions interpreting similar statutes vary depending on the wording of the statute. *See, e.g., United States v. Feola*, 420 U.S. 671, 95 S. Ct. 1255, 43 L. Ed. 2d 541 (1975) (holding awareness of officer's status is not an element of assault of a federal officer); *Commonwealth v. Flemings*, 539 Pa. 404, 652 A.2d 1282 (1995) (same result under state law); *but see State v. Morey*, 427 A.2d 479 (Me. 1981) (knowledge is an element); *State v. Moll*, 206 N.J. Super. 257, 502 A.2d 87 (knowledge is an element), *cert. denied*, 103 N.J. 498, 511 A.2d 670 (1986); *People v. Pineiro*, 116 A.D.2d 599, 497 N.Y.S.2d 460 (N.Y. App. Div. 1986) (same).

*Tunney*, 129 Wn.2d at 339 n.2. Although we are aware that Division Two has since decided to follow *Allen, see State v. Filbeck*, 89 Wn. App. 113, 116-17, 952 P.2d 189 (1997), the Supreme Court's comments have caused us to take a second look at this issue for purposes of the instant appeal.

It is true that the term "assault" carries within it the concept of knowing or purposeful conduct. *See Allen*, 67 Wn. App. at 826 (citing *State v. Hopper*, 118 Wn.2d 151, 822 P.2d 775 (1992); *State v. Mathews*, 60 Wn. App. 761, 766-67, 807 P.2d 890 (1991); *State v. Sample*, 52 Wn. App. 52, 757

P.2d 539 (1988); *State v. Jones*, 34 Wn. App. 848, 664 P.2d 12 (1983)). It is also true that under RCW 9A.08.010(1)(a) a person acts with intent or intentionally when he acts with the objective or purpose to accomplish a result which constitutes a crime, and that under RCW 9A.08.010(1)(b) a person knows or acts knowingly or with knowledge when he is aware of facts, circumstances, or a result described by a statute defining an offense. *See Allen*, 67 Wn. App. at 826-27. Moreover, the statute making assault of a law enforcement officer performing official duties a Class C felony defines a form of aggravated assault. At common law, assault and battery were merely misdemeanors. *See* WAYNE R. LaFAVE & AUSTIN W. SCOTT, CRIMINAL LAW § 80, at 603 (1972) (hereinafter, "LaFAVE & SCOTT").

As the *Allen* court recognized:

> The distinctions now drawn between various kinds of crimes in terms of their seriousness, as reflected by the punishments provided for them, would lose much of their significance if an intent to cause any one specific type of harm would suffice for conviction as to any other type of harm which is criminal when intentionally caused.

LaFAVE & SCOTT § 34, at 243. But one searches section 34 of LaFAVE & SCOTT (as well as the post-*Allen* supplements to section 34, none of which cites *Allen*) in vain for any indication that this principle of jurisprudence was intended by the authors to apply to a situation where a defendant assaults a law enforcement officer performing official duties at the time of the assault without knowledge of the victim's official status.

Instead, the examples given by LaFAVE & SCOTT at page 243 address the concept of transferred intent. For example, if A intends to kill B by shooting him, but misses and kills C instead, "A's intent to kill B may suffice as to his causing the death of C, but A's intent to steal from C will not suffice as to his [unintentionally] causing the burning of C's property [in the course of carrying out the theft]." LaFAVE & SCOTT § 34 at 243. This is because "while a defend-

ant can be convicted when he both has the mens rea and commits the actus rea required for a given offense, he cannot be convicted if the mens rea relates to one crime and the actus rea to another." *Id.*

But here we are not dealing with the concept of transferred intent. Palmer, with or without knowledge of Officer Neubert's official status, intended to assault Officer Neubert and no one else. Therefore, the specific question before us is whether A, who assaults B, intending to assault B but not knowing that B is a law enforcement officer performing official duties, has both the mens rea and the actus rea for the crime of third degree assault as defined by RCW 9A.36.031(1)(g). Put another way, if A intentionally assaults B, believing B to be only a private citizen because B (although he is a police officer performing official duties) is wearing plain clothes, does A have both the mens rea and the actus rea for the aggravated crime of third degree assault or merely fourth degree assault?

After noting that "crimes are frequently made up of several physical elements, and that a crime may be defined so as to require one type of fault as to one element, another type as to another element, and no fault at all as to a third element," LaFave & Scott § 31, at 218, the authors cite the leading English case of *Regina v. Prince*, L.R. 2 Cr. Cas. Res. 154 (1875), wherein the defendant was charged with unlawfully taking a girl under the age of 16 out of the possession of her father against the will of the father. The defendant reasonably believed the girl to be 18 years of age, but this was no defense. The defendant merely thought that he was committing a different kind of wrong from that which in fact he was committing. "As one court explicitly stated, even under his own understanding of the circumstances the defendant intended to commit the crime of fornication, and on that basis he may be held accountable for a crime different and more serious than he

intended." LaFave & Scott § 47, at 360 (footnote omitted).[2]

Although the authors think this particular reasoning is unsound, they approve of the MODEL PENAL CODE principle that "the grade of theft is to be determined by the actual value of the property taken, so that the defendant's reasonable mistake in believing that he has taken property of a value which would only warrant conviction for misdemeanor theft is no defense to a charge of felonious theft." LaFave & Scott § 47, at 361-62. The authors also approve of the MODEL PENAL CODE principle increasing the degree of criminality for sex offenses if the victim is below age 10

> for the reason that any error that is at all likely to be made would still have the young girl victim far below the age for sexual pursuit by normal males. The point is that such judgments should be made as matters of policy on an offense-by-offense basis, as in the [Model Penal] Code, in lieu of uncritical acceptance of the more general lesser legal wrong and lesser moral wrong theories.

LaFave & Scott § 47, at 362 (internal quotation marks and footnotes omitted).

Our extensive review of LaFave & Scott leads to the inescapable conclusion that neither the passage relied upon by the *Allen* and *Tunney* courts nor any other passage from LaFave & Scott supports the proposition that knowledge of an assault victim's status as a law enforcement officer performing official duties is a necessary element of the crime of third degree assault as defined by RCW 9A.36.031(1)(g). Accordingly, we must construe the statute anew.

In some instances, legislative intent with respect to the

---

[2]*Cf. State v. Chhom*, 128 Wn.2d 739, 743-44, 911 P.2d 1014 (1996) wherein the Supreme Court observed that although the crime of first degree rape of a child contains no mental element, the charge of attempted first degree rape of a child brings into the crime of rape of a child " 'the intent to have sexual intercourse' " (the criminal result) but it does not add anything to the remaining strict liability requirements (perpetrator and victim not married, and the ages of the victim and perpetrator). As to these elements, attempted rape of a child is still a strict liability offense.

type of mental culpability that must accompany a particular material element of a given degree of crime is clear from the wording of the statute. In defining the various degrees of assault, the Legislature has provided, for example, that a person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm, assaults another and inflicts great bodily harm. RCW 9A.36.011(1)(c). If the person intentionally assaults another and thereby recklessly inflicts substantial bodily harm, he or she is guilty of second degree assault. RCW 9A.36.021(1)(a). If the person, with criminal negligence, causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering, he or she is guilty of third degree assault. RCW 9A.36.031(1)(f). And if the person merely assaults another, without intending to inflict great bodily harm, without recklessly inflicting substantial bodily harm, and without, through criminal negligence, causing bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering, he or she is guilty of fourth degree assault (except in the case of a custodial assault). RCW 9A.36.041(1).

Our Legislature's failure to explicitly define the mental state that it intends to apply to the various material elements of RCW 9A.36.031(1)(g) may be meaningful in and of itself, for it is clear that when the Legislature intends a particular mental state to accompany the infliction of bodily injury, as in the cases of first, second, and third degree assault involving bodily injury, it has not hesitated to say so. Moreover, when the Legislature intends to require knowledge of the victim's status as a law enforcement officer performing official duties to be an element of an aggravated degree of an offense, it can easily do so in unmistakable terms. The Legislature in fact did exactly that in the aggravated first degree murder statute:

> A person is guilty of aggravated first degree murder if he or she commits first degree murder as defined by RCW 9A.32.030(1)(a), as now or hereafter amended, and one or more of the following aggravating circumstances exist:

(1) The victim was a law enforcement officer . . . who was performing his or her official duties at the time of the act resulting in death *and the victim was known or reasonably should have been known by the person to be such at the time of the killing*[.]

RCW 10.95.020 (emphasis added).[3] Accordingly, the absence of language in RCW 9A.36.031(1)(g) requiring knowledge of the victim's status as a police officer performing official duties at the time of the assault would not appear to be a mere oversight.

This conclusion is bolstered by other definitions of third degree assault contained in RCW 9A.36.031. For example, a person is guilty of third degree assault if he or she "[w]ith intent to prevent or resist the execution of any lawful process or mandate of any court officer or the lawful apprehension or detention of himself or another person, assaults another[.]" RCW 9A.36.031(1)(a). But no similar language

---

[3]Supreme Court decisions applying the aggravated murder statute leave it unclear whether the phrase "and the victim was known or reasonably should have been known by the person to be such at the time of the killing" relates back to the person's knowledge that the victim was a law enforcement officer performing his or her official duties at the time of the act resulting in death, or merely relates back to the person's knowledge that the victim was a law enforcement officer. In *State v. Hughes*, 106 Wn.2d 176, 721 P.2d 902 (1986), the trial court defined aggravated first degree murder for the jury using the language of the aggravated first degree murder statute. But the "to convict" instruction required the State to prove only that the defendant knew the victim was a law enforcement officer at the time of the killing and not that the defendant also knew that the victim was performing official duties at the time of the killing. The defendant argued that this was reversible error.

The defense theory at trial had been that the defendant did not know the victim was a law enforcement officer, and not, as contended on appeal, that the defendant knew the victim was a police officer but not that the victim was acting in his official capacity at the time of the killing. *Hughes*, 106 Wn.2d at 198. Concluding that under the facts of the case it was "highly unlikely that the latter argument would have been at all persuasive at trial," the court determined that "the instructions could not have been prejudicial in any event." *Id.* at 198-99. Therefore, the Supreme Court held that the trial court "correctly instructed the jury as to all of the elements of aggravated murder in the first degree; no error was committed in that regard." *Id.* at 196.

But after *Hughes*, the Supreme Court rejected the notion that a harmless error analysis is ever applicable to instructional error with respect to the omission of an essential element of the crime in a "to convict" instruction. *See State v. Smith*, 131 Wn.2d 258, 263-65, 930 P.2d 917 (1997). Thus, to the extent that *Hughes* is based on a harmless error analysis, its continued validity is questionable.

defines the mental state that must accompany the assault of a person employed as a transit operator or driver while that person is operating a vehicle that is owned or operated by a transit company and that is occupied by one or more passengers. *See* RCW 9A.36.031(1)(b). And no similar language defines the mental state that must accompany the assault of a school bus driver employed by a school district or a private company under contract for transportation services with a school district while the driver is operating or is in control of a school bus that is occupied by one or more passengers. *See* RCW 9A.36.031(1)(c). The same is true with respect to RCW 9A.36.031(1)(e) making it third degree assault to assault a fire fighter or other employee of a fire department, county fire marshal's office, county fire prevention bureau, or fire protection district who is performing his or her official duties at the time of the assault. *See also* RCW 9A.36.031(1)(h) making it third degree assault to assault a nurse, physician or health care provider performing nursing or health care duties at the time of the assault and defining "nurse," "physician" and "health care provider" as a person licensed under the appropriate chapter of Title 18 RCW and employed by or contracting with a hospital licensed under the appropriate chapter of Title 70 RCW. Again, the Legislature failed to specify the mental state that it intends to accompany the various material elements of the crime.

Although it might be assumed that in most instances a person who assaults a transit or school bus driver engaged in the operation of a transit vehicle or school bus knows of the victim's official status, by virtue of markings on the vehicle if for no other reason, it is not difficult to envision a situation in which an employee of a county fire marshal's office or a local fire department might be performing official duties without the benefit of a uniform or officially marked vehicle or other means by which a defendant might discover the victim's official status before committing an assault. And, of course, it is not at all difficult to envision an undercover police officer involved in a "buy-bust" narcotics operation, as in this case, where the officer

conceals his identity as an officer from the defendant as part of his or her official duties.

So the question is whether the Legislature intended, in enacting the third degree assault statute, that some defendants simply take their assault victims as they find them, that is, that some defendants simply assume the risk that their assault victims are undercover law enforcement officers, out-of-uniform fire department employees, or members of other specially protected classes under RCW 9A.36.031(1) performing official duties at the time of the assault.

As discussed above, LaFave & Scott teaches that a crime may be defined so as to require one type of fault as to one element, another type as to a second element, and no fault at all as to a third element. Among the factors that courts consider in determining whether the Legislature really meant to impose liability without fault as to one or more material elements of a crime is the seriousness of harm to the public which may be expected to follow from the forbidden conduct. "Other things being equal, the more serious the consequences to the public, the more likely the legislature meant to impose liability without regard to fault[.]" LaFave & Scott § 31, at 219-20.

It could be argued, and has been in the instant appeal, that the underlying purpose of deterring assaults upon law enforcement officers performing official duties would be better served by reserving the greater punishment for those defendants who assault persons they know to be law enforcement officers performing official duties. But that view is not universal.

> For example, it has been suggested that a strict-liability offense may be a more efficacious deterrent than an ordinary criminal statute because "a person engaged in a certain kind of activity would be more careful precisely because he knew that this kind of activity was governed by a strict liability statute" and because "the presence of strict liability offenses might have the added effect of keeping a relatively large class of persons from engaging in certain kinds of activity."

LaFave & Scott § 31 at 222-23 (quoting Richard A. Wasser-

strom, *Strict Liability in the Criminal Law*, 12 STAN. L. REV. 731, 736 (1960)). Moreover, these policy arguments are better addressed to the Legislature than the courts.

■■■■ Assault is not, in and of itself, a strict liability crime; rather, the mens rea of assault is the intent to commit a battery or to create apprehension of harm. 13A SETH AARON FINE, WASHINGTON PRACTICE: CRIMINAL LAW § 404 (Supp. 1996), *cited in Tunney*, 129 Wn.2d at 339 n.2. Therefore, we conclude that none of the common law principles of jurisprudence outlined in LAFAVE & SCOTT are particularly offended by a construction of RCW 9A.36.031(1)(g) determining that no additional mental state beyond the mens rea of assault is required.

In addition to examining the common law, we must also consider the guidelines our Legislature has provided for interpreting criminal statutes:

(1) The general purposes of the provisions governing the definition of offenses are:

(a) To forbid and prevent conduct that inflicts or threatens substantial harm to individual or public interests;

(b) To safeguard conduct that is without culpability from condemnation as criminal;

(c) To give fair warning of the nature of the conduct declared to constitute an offense;

(d) To differentiate on reasonable grounds between serious and minor offenses, and to prescribe proportionate penalties for each.

(2) The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further general purposes stated in this title.

RCW 9A.04.020. In applying these guidelines to RCW 9A.36.031(1)(g), we are persuaded by the reasoning of the United States Supreme Court in *United States v. Feola*, 420 U.S. 671, 95 S. Ct. 1255, 43 L. Ed. 2d 541 (1975).

In *Feola*, the U.S. Supreme Court addressed the scienter

requirement of 18 U.S.C. § 111, which makes it a federal crime to assault a federal law enforcement officer engaged in the performance of official duties. After canvassing the legislative history of section 111, the Court concluded:

> [I]n order to effectuate the congressional purpose of according maximum protection to federal officers by making prosecution for assaults upon them cognizable in the federal courts, § 111 cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer. All the statute requires is an intent to assault not an intent to assault a federal officer. A contrary conclusion would give insufficient protection to the agent enforcing an unpopular law, and none to the agent acting under cover.

*Feola*, 420 U.S. at 684 (footnote omitted). Likewise, applying our Legislature's guidelines, we conclude that RCW 9A.36.031(1)(g) should not be construed as embodying an unexpressed requirement that the defendant know the victim to be a law enforcement officer performing official duties at the time of the assault.

First, increasing punishment for persons who assault law enforcement officers forbids conduct that inflicts substantial harm on individual and public interests. RCW 9A.04-.020(1)(a). The public has a strong interest in law enforcement officer safety because it affects officers' ability to effectively carry out their duties. *Feola*, 420 U.S. at 681, 684. Second, not requiring the State to prove that the defendant had knowledge the victim was a law enforcement officer performing official duties does not make nonculpable conduct criminal. RCW 9A.04.020(1)(b). The assault element of RCW 9A.36.031(1)(g) in and of itself requires culpability regardless of the victim's status.[4] Third, by its very existence, RCW 9A.36.031(1)(g) gives fair warning of

---

[4] As the *Feola* Court recognized, there may be circumstances in which ignorance of the status of the person assaulted negates the very existence of mens rea: "For example, where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. In a situation of that kind, one might be justified in exerting an element of resistance, and an honest mistake of fact would not be consistent with criminal intent." *Feola*, 420 U.S. at 686.

the conduct that constitutes the offense. RCW 9A.04-.020(1)(c). Moreover, the defendant knows from the outset that the assault is criminal even if the defendant does not know that the victim is a law enforcement officer. *Feola*, 420 U.S. at 685. Fourth, the strong public interest in protecting law enforcement officers, discussed above, provides a reasonable basis for differentiating the penalty for assaulting a law enforcement officer and the penalty for assaulting an ordinary citizen. RCW 9A.04.020(1)(d).

The parties have provided us with no legislative history with respect to the third degree assault statute. Our independent research has found none that conflicts with our present construction of the statute at issue. Although it could be argued that legislative inaction following *Allen* and *Tunney* indicates legislative approval of the statutory construction contained in those opinions, the Supreme Court's questioning of our underlying premise in *Tunney* casts considerable doubt on any such premise. Moreover, the Legislature historically has left it up to the courts to define assault in accord with common law principles. *See, e.g., State v. Carlson*, 65 Wn. App. 153, 158, 828 P.2d 30 (1992) (noting that the courts must rely upon common law definitions because the criminal code does not define assault). Thus, legislative silence in the face of court decisions with respect to the mental state required for various degrees of assault may indicate little, in terms of legislative intent, particularly where, as here, a given statute is silent with respect to the culpability requirements.

Our extensive review of RCW 9A.36.031(1)(g) leads us to the conclusion that, by carefully delineating the mens rea that must accompany some of the material elements of

---

(Citations in footnote omitted.) The same reasoning applies under Washington law. A criminal assault requires intent, which is defined as acting "with the objective or purpose to accomplish a result which constitutes a crime," RCW 9A.08.010(1)(a). Thus, the defendant must act unlawfully. A person acting in self defense is acting lawfully—self-defense negates criminal intent. *See, e.g., State v. Acosta*, 101 Wn.2d 612, 617-18, 683 P.2d 1069 (1984). Thus, to conclude that some material elements of the statute require no mental state is not to treat defendants unfairly. This statute does not turn *legitimate* conduct unlawful merely because of the identity of the individual affected.

various forms of aggravated assault and at the same time omitting any mens rea requirements with respect to some of the material elements of other forms of aggravated assault, the Legislature has acted deliberately in accord with its own underlying policy decisions regarding the various purposes of the criminal law. Therefore, we hold that in order to convict a defendant of third degree assault, in violation of RCW 9A.36.031(1)(g), the State must prove that the victim was a law enforcement officer performing official duties at the time of the assault, but need not prove the defendant had knowledge that this was so. Instead, the State need prove only the mens rea for assault.

Here, of course, the jury was instructed that the State must prove that Palmer knew that Officer Neubert was a law enforcement officer at the time of the assault. We recognize that that instruction constitutes the law of the case because neither party challenged it on appeal. We also recognize that the only question directly posed to us is whether the State must prove that Palmer knew that Officer Neubert was performing official duties at the time of the assault. Indeed, the State has taken some pains in this appeal to characterize the *Allen* court's ruling that the State must prove the defendant knew the victim was performing official duties at the time of the assault as dicta, in that the only question directly posed to the *Allen* court was whether the State must prove that the defendant knew the victim was a law enforcement officer at the time of the assault. *See Allen*, 67 Wn. App. at 826 ("Mr. Allen contends one of the elements of assaulting a police officer is knowledge the victim is a law enforcement officer.").

But a reviewing court may need to review an unchallenged portion of a "to convict" instruction in order to properly review a challenged portion of the same instruction. For example, in *Feola* the federal district court instructed the jury that the defendants were not required to have knowledge that their victims were federal officers engaged in the performance of official duties to be convicted either of conspiracy to assault a federal officer or assault of a federal officer. *Feola*, 420 U.S. at 675. On appeal, the

Second Circuit affirmed the assault convictions, but reversed the conspiracy convictions, concluding that the government must prove that the defendants knew their victims were federal officers to convict them of conspiracy to assault federal officers. *Id.*

The government appealed to the Supreme Court and argued that the Second Circuit erred because no greater scienter requirement should be required for the conspiracy to assault a federal officer charge than for the assault of a federal officer charge. *Feola*, 420 U.S. at 676. Thus, in order to determine if the trial court properly instructed the jury on the conspiracy charge, the Court was required to review the district court's unchallenged "to convict" instruction on the assault charge. After doing so, the Court concluded that the government was not required to prove that the defendants had knowledge that their victims were federal officers for either the assault or conspiracy charges. *Id.* at 684, 696.

Our position is analogous to that of the *Feola* Court. The statute makes it assault in the third degree if the defendant (under circumstances not amounting to first or second degree assault) "[a]ssaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault[.]" RCW 9A.36.031(1)(g). Given this sentence structure, we logically had to determine whether the State must prove that the defendant knew the victim was a law enforcement officer performing official duties at the time of the assault. Such policy reasons as there may be for distinguishing between the defendant's knowledge of the officer's status as an officer and knowledge that the officer was performing official duties is for the Legislature, not the courts, and the Legislature has made no such distinction here. Accordingly, a decision with respect to both issues was necessary to resolve Palmer's appeal.

In sum, we hold that although the State must prove that the victim was a law enforcement officer or other employee of a law enforcement agency who was performing his or

her official duties at the time of the assault in order to convict under RCW 9A.36.031(1)(g), the State is not required to prove that the defendant knew either that the victim was a law enforcement officer or that the victim was performing official duties at the time of the assault. Accordingly, we find no instructional error in the trial court's failure to instruct the jury that the State must prove that Palmer knew that Officer Neubert was performing official duties at the time of the assault, and affirm Palmer's conviction of third degree assault.

BAKER and ELLINGTON, JJ., concur.

Review granted at 138 Wn.2d 1008 (1999).