FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JUL 30 AM 9: 25

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 76367-9-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| TRAVIS DANIEL KEALOHA BEYER, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 30, 2018 |
| | ) | |

DWYER, J. — Travis Beyer claimed self-defense during his trial for assault in the second degree based on a physical altercation with a doorman at an adults-only night club. He contends that the trial court should have provided a jury instruction on assault in the fourth degree. He bases his claim for an inferior-degree offense instruction on the premise that the altercation began as self-defense and then crossed into assault, and argues that the State could not prove that the injuries occurred during the assault rather than the initial self-defense phase. This novel argument improperly parses the assault into separate individual acts. The trial court did not err in providing only the second degree assault instruction for the ongoing course of conduct. Furthermore, the State provided sufficient evidence to disprove the self-defense claim. We affirm.

I

On November 15, 2015, Beyer attended the Seattle Seahawks home football game. At the stadium, Beyer befriended three men sitting near him and accepted their invitation to go out for drinks after the game. The four men went to various bars over the course of the following three hours, consuming one or two drinks apiece at each bar.

At approximately 1:00 a.m., Beyer and his new friends arrived at a dance club called Kittens Cabaret Night Club. Dylan Bruers was the doorman on duty that evening. Bruers advised Beyer and his friends of the entry fee and a required minimum beverage purchase.

After the four men sat down, a waitress approached them for their drink orders. Beyer inquired about the drink specials and the waitress explained that clubs of this type cannot serve alcohol in Washington. The men complained about the unavailability of alcohol and expressed unwillingness to pay $5 for a soda. Ignoring the waitress, the four friends discussed which bar to visit next.

The frustrated waitress spoke to Bruers about the party's refusal to purchase drinks. Bruers went over to the men and reminded them of the required drink minimum. The men reluctantly ordered their drinks and began using their cell phones to locate a different establishment to attend. Their cell phone use prompted Bruers to return to the tables to tell the men that cell phone use was prohibited.

Soon after, Beyer and his friends decided to leave the club. On his way to the exit, Beyer directed disparaging remarks toward the club and Bruers. While

his friends went out the exit, Beyer attempted to exit through the entrance and knocked over two umbrellas. Bruers approached Beyer and the two exchanged words. Beyer punched Bruers in the face. Beyer then hit Bruers several more times, rendering Bruers unconscious. Beyer continued to punch the unconscious doorman until two Kittens employees intervened.

Bruers sustained multiple facial and nasal fractures and several lacerations. He required surgery to repair bilateral nasal fractures.

The State charged Beyer with one count of assault in the second degree. At trial, Beyer argued that he punched Bruers in self-defense. Beyer claimed that he feared injury due to Bruers' increasingly aggressive behavior.

According to Beyer, Bruers was authoritative and aggressive during their interactions about drink purchases and cell phone use. Beyer testified that he and Bruers were "jawing" as he walked toward the exit. Beyer directed his attention at Bruers and proclaimed, "[t]his place sucks . . . [t]his guy sucks, everything sucks."

While Beyer was directing these comments at Bruers, he failed to notice his friends leave through the exit door. Beyer claimed that he mistakenly tried to unlatch the rope at the entrance door in order to exit the facility. After he knocked over the umbrellas, Beyer testified that Bruers "walk[ed] all the way up into my face, like directly in front of me" and the two exchanged words. Beyer felt that Bruers was "puffed up" and trying to intimidate him. Beyer claimed that Bruers used threatening language and then shoved him back into a wall.

3

At that point, Beyer became concerned that Bruers "was going to do something else." Beyer decided that he "wasn't going to wait and find out what [Bruers'] going to do next" and "just started swinging." Beyer claimed that he could not clearly remember the details after he threw the first punch because his adrenaline was pumping and he just kept swinging. But he admitted that he intentionally punched Bruers, and that he landed at least six punches. Beyer also admitted that Bruers' hands were down at his sides when Beyer threw the first punch.

Bruers' testimony paints a different picture of the events leading up to the punch. Bruers testified that he approached Beyer after Beyer unhooked the rope and knocked over the umbrellas. At that time, Bruers told Beyer that it was time for his party to leave. Beyer responded by repeatedly asking Bruers to go outside with him. Bruers testified that he did not respond to this invitation and continued telling Beyer that their party should leave. Beyer then stepped up into Bruers' face, about two inches away. Bruers put his hands on Beyer's chest in order to step back and make space between them. Bruers testified that Beyer then put his hands up and asked if Bruers wanted to fight. Bruers did not respond to the invitation. His next recollection was waking up on the floor with police officers above him and someone holding a towel to his split lip.

After testimony and before closing arguments, Beyer requested that the trial court provide a jury instruction on assault in the fourth degree. Beyer claimed that the evidence supported that he initially acted in self-defense but the "continued punching of Mr. Bruers at some point went from lawful force to

4

unlawful force because there was no—the threat had subsided." Beyer argued that an instruction on assault in the fourth degree was warranted because the State had not proven beyond a reasonable doubt that the injuries occurred after the altercation evolved from self-defense to assault. The trial court denied the request for the instruction on fourth degree assault without explanation. The jury received instructions on assault in the second degree and self-defense.

The jury found Beyer guilty of assault in the second degree. Beyer appeals.

II

A

Beyer argues that the trial court erred by failing to give a proposed jury instruction on the inferior degree offense of assault in the fourth degree. We disagree.

"Generally, a criminal defendant may be convicted only of crimes charged in the State's information." State v. Corey, 181 Wn. App. 272, 275, 325 P.3d 250 (2014). But a jury may find a defendant guilty of a crime that is an inferior degree to the crime charged. RCW 10.61.003; State v. Fernandez-Medina, 141 Wn.2d 448, 453, 6 P.3d 1150 (2000). A trial court may only instruct the jury on an inferior-degree offense when

> "(1) the statutes for both the charged offense and the proposed inferior degree offense 'proscribe but one offense'; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense."

5

Fernandez-Martinez, 141 Wn. 2d at 454 (quoting State v. Peterson, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)).

Whether to instruct a jury on an inferior-degree offense requires the application of law to facts and is reviewed de novo. Corey, 181 Wn. App. at 276. We view the supporting evidence in the light most favorable to the party who requested the instruction. Fernandez-Medina, 141 Wn.2d at 455-56. The supporting evidence must affirmatively establish the defendant's theory of the case. Fernandez-Martinez, 141 Wn.2d at 456.

On appeal, the parties only dispute the factual element of the test. For an inferior-degree offense instruction, the factual showing must be "more particularized" than for other jury instructions. Fernandez-Martinez, 141 Wn.2d at 455. The evidence must raise an inference that *only* the inferior-degree offense was committed. Fernandez-Martinez, 141 Wn.2d at 455. "[W]hen substantial evidence in the record supports a rational inference that the defendant committed only the lesser included or inferior degree offense to the exclusion of the greater offense, the factual component of the test for entitlement to an inferior degree offense instruction is satisfied." Fernandez-Martinez, 141 Wn.2d at 461.

The State charged Beyer with assault in the second degree. A defendant is guilty of assault in the second degree if he "[i]ntentionally assaults another and thereby recklessly inflicts substantial bodily harm." RCW 9A.36.021(1)(a). Beyer requested an inferior-degree instruction on assault in the fourth degree. "A person is guilty of assault in the fourth degree if, under circumstances not

amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another." RCW 9A.36.041(1). In this case, the factual component of the inferior-degree instruction test pertains to whether the evidence, viewed in the light most favorable to Beyer, supports that Beyer only committed assault in the fourth degree.

In support of the fourth degree assault instruction, Beyer contends that he threw the first punches in self-defense. While he admits that continuing to punch Bruers after he became unconscious crossed over into assault, Beyer claims that the State failed to prove that Bruers' injuries occurred during the assault phase. Without proof of substantial bodily harm from the assault, Beyer argues that he only committed assault in the fourth degree.

This argument ignores the nature of the crime of assault. Assault is "a course of conduct crime," rather than a separate act offense. State v. Villanueva-Gonzalez, 180 Wn.2d 975, 982, 986, 329 P.3d 78 (2014). Multiple assaultive acts involving the same parties and occurring in a short time frame are considered a single assault. See Villanueva-Gonzalez, 180 Wn.2d at 985 (determination of whether multiple assaultive acts are part of the same course of conduct requires examination of the totality of the circumstances, including the length of time over which the assault took place, whether the acts took place in the same location, the defendant's intent or motivation for the different acts, whether the acts were uninterrupted, and whether the defendant had an opportunity to reconsider his actions). This "helps to avoid the risk of a defendant being 'convicted for every punch thrown in a fistfight.'" Villanueva-

Gonzalez, 180 Wn.2d at 985 (quoting State v. Tili, 139 Wn.2d 107, 116, 985 P.2d 365 (1999)).

As a single course of conduct, Beyer's actions cannot be parsed into a self-defense phase and an assault phase. Consequently, the entirety of the brief course of conduct amounted to either an assault that caused substantial bodily harm or an action justified as self-defense. The evidence cannot establish that Beyer committed only fourth degree assault to the exclusion of second degree assault. Therefore, a fourth degree assault instruction was inapplicable. We conclude that the trial court did not err by refusing to instruct the jury on assault in the fourth degree.

B

Beyer contends that the State failed to prove beyond a reasonable doubt that he had the requisite intent to assault Bruers or that he recklessly caused serious bodily injury. We disagree.

Due process requires that the State prove every element of a crime beyond a reasonable doubt. State v. Johnson, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). To determine whether sufficient evidence supports a conviction, an appellate court must "view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." State v. Homan, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). A claim of insufficient evidence admits the truth of the State's evidence and all reasonable inferences from that evidence. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable

inferences must be interpreted in favor of the State and most strongly against the defendant. Salinas, 119 Wn.2d at 201. Additionally, an appellate court "must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence." Homan, 181 Wn.2d at 106.

Second degree assault required the State to prove that Beyer intentionally assaulted Bruers and recklessly inflicted substantial bodily harm. RCW 9A.36.021(1)(a). Beyer raised a self-defense claim, which then shifted the burden to the State to prove the absence of self-defense beyond a reasonable doubt. State v. Walden, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997). "Evidence of self-defense is evaluated 'from the standpoint of the reasonably prudent person, knowing all the defendant knows and seeing all the defendant sees.'" Walden, 131 Wn.2d at 474 (quoting State v. Janes, 121 Wn.2d 220, 238, 850 P.2d 495 (1993)). Reasonable force in self-defense is justified where there is an appearance of imminent danger. State v. Bradley, 141 Wn.2d 731, 737, 10 P.3d 358 (2000). The degree of force used is limited to what a reasonably prudent person would find necessary under the conditions as they appeared to the defendant. Walden, 131 Wn.2d at 474.

Beyer argues that the State failed to provide sufficient evidence to refute his claim of self-defense and prove intent and recklessness as needed for conviction of second degree assault. A claim of self-defense negates both intent and recklessness. See State v. Brown, 94 Wn. App. 327, 343 n.4, 972 P.2d 112 (1999) (because a person acting in self-defense is acting lawfully, proof of self-defense negates the element of intent), aff'd, 140 Wn.2d 456, 998 P.2d 321

9

(2000); State v. Dyson, 90 Wn. App. 433, 438, 952 P.2d 1097 (1997) (in context of assault, "self-defense negate[s] the element of recklessness, which requires that a person disregard a substantial risk that a wrongful act may occur, because self-defense 'as defined, is not wrongful'" (quoting State v. Hanton, 94 Wn.2d 129, 133, 614 P.2d 1280 (1980))). Therefore, the State was required to disprove the self-defense claim beyond a reasonable doubt in order to prove that Beyer intentionally assaulted Bruers and recklessly caused substantial bodily harm.

To refute the claim of self-defense, the State provided evidence that Beyer was spoiling for a fight rather than defending himself. Bruers testified that Beyer was confrontational, getting in his face, and repeatedly asking him to go outside. Bruers never gave any sign that he intended to escalate the altercation from words to blows. Beyer acknowledged that when he struck, Bruers' hands were down by his sides and were not in fists. While Beyer claimed that Bruers instigated the fight by pushing him, Bruers testified that he merely attempted to create some distance when Beyer got in his face.

In addition to testimony from the parties, the jury had the opportunity to watch several surveillance videos from the club. One of the videos showed Bruers stumbling backward in the hallway with his arms up and then coming to a stop with his hands at his side. Beyer then punched Bruers repeatedly in the face. The beating continued until Beyer was tackled by a club employee.

Viewing this evidence in the light most favorable to the State, the jury had sufficient evidence to conclude that Beyer instigated the fight with little

provocation rather than in response to the reasonable belief that he was in danger of imminent harm.

Additionally, the evidence shows that Beyer's use of force far exceeded the force necessary to prevent an offense against him. Bruers went down quickly and lost consciousness. Bruers never had the opportunity to counterpunch or defend himself. Despite this, Beyer continued to punch Bruers several more times, only stopping when a club employee intervened. The floor manager of the club testified that he saw "a person delivering blow after blow to another person." Beyer continued to punch the unconscious Bruers to the point that one of the witnesses feared Bruers was being pummeled "potentially to death." In light of this sustained violence even after incapacitation of the alleged threat, the jury had sufficient evidence to conclude that Beyer's use of force was not reasonable for a self-defense claim.

Viewing this evidence in the light most favorable to the State, the State demonstrated Beyer's lack of reasonable fear, disproportionate use of force, and intentionality. Therefore, the State provided sufficient evidence to disprove the self-defense claim beyond a reasonable doubt. Beyer's attempt to negate intent and recklessness through self-defense fails.

In addition to refuting the self-defense claim, the State provided evidence that Beyer intentionally assaulted Bruers. Beyer admitted, "Yeah, I intentionally punched him." Beyer also testified that he "wasn't going to wait and find out what [Bruers'] going to do next" and started swinging. This testimony clearly demonstrated his intention to punch Bruers. Considering this evidence in the

11

light most favorable to the State, the jury had sufficient evidence to conclude that Beyer intentionally assaulted Bruers.

The State was also required to demonstrate beyond a reasonable doubt that Beyer acted recklessly. "A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(c). Recklessness has both a subjective and objective component based on what the defendant knew and how a reasonable person would have acted with that knowledge. State v. R.H.S., 94 Wn. App. 844, 847, 974 P.2d 1253 (1999). "Without question, any reasonable person knows that punching someone in the face could result in a broken jaw, nose, or teeth, each of which would constitute substantial bodily harm." R.H.S., 94 Wn. App. at 847.

The jury heard the State's evidence and watched the surveillance video showing that Beyer intentionally punched first, rendered Bruers unconscious, and still continued to punch. The jury also heard Beyer's testimony that he continued the assault in an adrenaline fueled haze, not fully cognizant of his actions. The jury clearly disbelieved Beyer's claims. This was a credibility determination that is not reviewable on appeal. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

The State provided sufficient evidence to support conviction on assault in the second degree. Beyer's presented his self-defense claim, but the jury heard ample evidence to contradict this claim. "This court must defer to the trier of fact

on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). The jury resolved the conflicting testimony in favor of conviction and we defer to this conclusion.

Affirmed.

We concur:

_Dwyer, J._

_Mann, ACJ._