

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76609-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEREMIAH CROUCH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: <u>September 24, 2018</u> |
| | ) | |

SMITH, J. — Jeremiah Crouch appeals his felony conviction for second degree assault. Because his defense counsel proposed a self-defense instruction that improperly lowered the State's burden of proof and Crouch was prejudiced by this deficient performance, we reverse.

## FACTS

On September 28, 2016, Brian Decker, a security guard, dressed in a police style uniform with tactical gear, including a firearm and a taser, observed Crouch enter Walgreens with a bag that appeared to be empty. Decker later noticed the bag seemed to be fuller than it had been when Crouch entered the store and asked Crouch if he had slipped any Walgreens merchandise in the bag. Crouch told Decker that he purchased the items from another store and then produced the items (some shirts) that had the Walgreens logos and security stickers on them. Decker pushed Crouch several times as Crouch attempted to

leave the store with the items. Decker testified that Crouch then admitted to taking the shirts and discarded them when Decker informed him he could not leave the store with them as that would be shoplifting. After Crouch discarded the items, Decker told Crouch that he was being detained for shoplifting and needed to remain in the store until law enforcement arrived. Crouch again attempted to leave the store and Decker physically detained him by pushing him back two more times. About a minute later, Crouch took out a knife and told Decker, "'Well, I have this so I guess I'm leaving.'" Report of Proceedings (RP) (Feb. 8, 2017) at 157; Exhibit 3. Decker then drew his gun and told Crouch to drop the knife. Crouch complied, put the knife in his bag, and once again attempted to leave, walking toward Decker with his arms at his sides. When Crouch did not respond to Decker's orders to stay, Decker used a taser on Crouch twice, handcuffed him, and kneeled on him as Decker waited for police to arrive.

The State charged Crouch with second degree assault. Before trial, the parties stipulated that Decker's initial detention of Crouch was lawful, but that the reasonableness of the amount of force used by Decker to affect the detention was a question of fact for the jury.

At trial, the State presented two witnesses: the police officer who responded to the scene and collected the surveillance videos and Decker. The trial court admitted Exhibit 3, a video recording of the encounter between Crouch and Decker that did not include audio. Crouch did not present any witnesses.

2

Defense counsel proposed a self-defense instruction that is only applicable when force is used against a police officer or correctional officer. The proposed instruction stated, in relevant part:

> A person may offer to use force to resist an arrest by someone known by the person to be a *peace officer, by the owner of a mercantile establishment, or by the owner's authorized employee or agent* only if the person being arrested is in actual and imminent danger of serious injury from an officer's use of excessive force. The person may employ such force and means as a reasonably prudent person would use under the same or similar circumstances.

Clerk's Papers (CP) at 26 (emphasis added). The trial court materially adopted the proposed instruction. Jury Instruction 10 states, in relevant part:

> A person may use or offer to use force to resist an arrest by someone known by the person to be a *security officer* only if the person being arrested is in actual and imminent danger of serious injury from an officer's use of excessive force. The person may employ such force and means as a reasonably prudent person would use under the same or similar circumstances.

CP at 41 (emphasis added).

In closing arguments, defense counsel argued that Decker's use of force against Crouch was not reasonable and because of the actual and imminent danger of serious injury, Crouch was justified in showing Decker his knife in self-defense. It also argued that the State did not prove that Decker was fearful of bodily injury, an element of second degree assault.

The jury submitted several questions to the court during deliberations. They asked to watch the surveillance video and they asked for a definition of "unlawful force" as used in the instruction defining an assault. CP at 48. Jury Instruction 7 stated:

3

> An assault is an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

CP at 38. At one point, the jury informed the court that it was "split on jury instruction #7" and was "wondering about the phrase, 'in fact creates in another a reasonable apprehension and <u>imminent fear of bodily injury</u>.'" CP at 50. It then stated that "[w]e are unable to agree as to whether the evidence supports this part of the assault charge . . . ." CP at 50. The court responded by telling the jurors to "review the jury instructions as a whole" and, after further deliberations, the jury returned a guilty verdict. CP at 51.

The trial court entered a felony judgment and sentence for second degree assault, sentencing Crouch to 18 months confinement. Crouch appeals.

### Ineffective Assistance of Counsel

Crouch argues that his counsel was ineffective because they proposed a jury instruction that lowered the State's burden of proof. The State concedes that the instruction given eased the State's burden and defense counsel's performance was, therefore, deficient. Because this misstatement prejudiced Crouch, we reverse.

An appellant may challenge a jury instruction that he proposed if it is in the context of an ineffective assistance claim. State v. Bradley, 141 Wn.2d 731, 736, 10 P.3d 358 (2000); see also State v. Kyllo, 166 Wn.2d 856, 861, 215 P.3d 177 (2009). The invited error doctrine does not preclude review. Kyllo, 166 Wn.2d at 861. To prevail on a claim of ineffective assistance of counsel, a defendant must

show that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

Here, the State concedes that counsel's performance was deficient because they proposed an incorrect self-defense instruction, and we accept that concession. RCW 9A.16.020(3) states that use of force is lawful "[w]henever used by a party about to be injured ... in preventing or attempting to prevent an offense against his or her person ... in case the force is not more than is necessary[.]" "It has long been the law in Washington that self-defense may be justified by *apparent* danger to the person claiming the benefit of the defense, as opposed to *actual* danger." Bradley, 141 Wn.2d at 736 (emphasis added).

But, the jury instruction proposed by defense counsel and the instruction given to the jury requires a higher risk of danger for self-defense to apply. Jury Instruction 10 states that "[a] person may use or offer to use force to resist an arrest by someone known by the person to be a security officer only if the person being arrested is in *actual and imminent danger of serious injury* from an officer's use of excessive force." CP at 41 (emphasis added). This instruction is proper when the force at issue is used against a police officer or a correctional officer and it requires actual danger of serious injury. Bradley, 141 Wn.2d at 737. But, Decker was not a police or correctional officer. We accept the State's concession that this instruction was improper.

The next issue is whether Crouch was prejudiced by his counsel's deficient performance. A defendant shows prejudice where there is a reasonable probability that the result of the trial would have been different absent the challenged conduct. Strickland, 466 U.S. at 694. Self-defense may be asserted as a complete defense to assault because proof of self-defense negates the intent element of assault. State v. Brown, 94 Wn. App. 327, 343 n.4, 972 P.2d 112 (1999). When raised by a defendant, the State must disprove self-defense as part of its burden to prove beyond a reasonable doubt that the defendant committed the offense charged. Kyllo, 166 Wn.2d at 862. The defendant's conviction cannot stand if the jury instructions relieve the State of its burden of proof. State v. Cronin, 142 Wn.2d 568, 580, 14 P.3d 752 (2000) (citing State v. Jackson, 137 Wn.2d 712, 727, 976 P.2d 1229 (1999).

Here, Crouch's defense relied in large part upon his self-defense claim. According to the jury instructions, the State only had to show that there was no actual and imminent danger of serious injury to disprove Crouch's self-defense claim. It did not have to disprove Crouch's subjective belief as to the apparent level of danger Decker posed. Both the State and defense counsel discussed this incorrect standard during their closing arguments and the State emphasized it using a power point slide. And, the jury's questions during deliberations indicate that it might have struggled with the issue of what force was reasonable under these circumstances. On this record, the State's lowered burden of proof prejudiced Crouch.

6

The State argues that Crouch was not prejudiced by Jury Instruction 10 because the evidence of his guilt was overwhelming and he did not demonstrate that he was subjectively afraid of Decker. To be entitled to a jury instruction on self-defense, the defendant must produce some evidence demonstrating self-defense. State v. Walden, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997) (citing State v. Janes, 121 Wn.2d 220, 237, 850 P.2d 495 (1993)). The evidence is evaluated from both a subjective point of view (what facts and circumstances were known to the defendant) and an objective point of view (what would a reasonable person have done in that situation). Id. at 474 (citing Janes, 121 Wn.2d at 238). The defendant may point to other evidence presented at trial, including the State's evidence, to meet this burden of production. State v. Fisher, 185 Wn.2d 836, 850, 374 P.3d 1185 (2016) (citing State v. Gabryschak, 83 Wn. App. 249, 253, 921 P.2d 549 (1996)).

Here, the surveillance video footage in Exhibit 3, shows that Decker's gun and taser were clearly visible to Crouch. It shows that Decker pushed Crouch several times without any physical contact in response by Crouch before Crouch took out his knife. Additionally, Decker testified that he was willing to detain Crouch "at all costs" and in the video Decker appears determined and does not display any hesitation or fear. RP (Feb. 8, 2017) at 195. This was sufficient subjective evidence of Crouch's fear to warrant a self-defense instruction. The State's argument to the contrary is not persuasive.

Alternatively, the State argues that Crouch was not entitled to a self-defense instruction because he had no right to resist Decker's lawful detention.

7

This argument conflates two issues: (1) whether Decker's initial detention of Crouch was lawful and (2) whether the manner of his detention was reasonable. At trial, Crouch and the State entered a stipulation that addressed both issues:

> The parties stipulate that the detention of the defendant by Brian Decker was lawful. The State will not argue that the detention was lawful, and defense will not argue that the detention was unlawful. The question of whether the amount of force used to effect the detention is a question of fact to be decided by the jury.

CP at 7. Therefore, whether the force used by Decker was reasonable was a question of fact for the jury and the lawfulness of the initial detention does not affect that. State v. Miller, 103 Wn.2d 792, 795, 698 P.2d 554 (1985) ("'Whether the force used is reasonable is a question of fact, to be determined in the light of the circumstances of each particular case.'") (quoting W. PROSSER, TORTS § 26, at 137 (3d ed. 1964)). None of the cases cited by the State stand for the proposition that a defendant is not entitled to a self-defense instruction where a security guard, after an initial, lawful detention, uses force that a jury could determine was unreasonable. See id. at 793 (defendant pushed store employees first while trying to escape detention); State v. Johnston, 85 Wn. App. 549, 555-56, 933 P.2d 448 (1997) (issue of whether defendant was entitled to a self-defense instruction based on the way a store employee attempted to detain her was not raised below and, therefore, not examined on appeal); State v. Garcia, 146 Wn. App. 821, 828-29, 193 P.3d 181 (2008) (defendant not guilty of third degree assault because that crime requires the defendant to assault another with the intent to resist a lawful apprehension and the store employee had no right to detain defendant); State v. Jones, 63 Wn. App. 703, 707, 821

8

P.2d 543 (1992) (the instructions given permitted the defendant to argue that he was not guilty of third degree assault because he could resist an unlawful arrest if he believed he was about to be injured and the force used to resist was reasonable).

The State relies on State v. Gonzales, 24 Wn. App. 437, 604 P.2d 168 (1979), for the proposition that the force used by Decker was lawful because it was a reasonable means to detain Crouch. In that case, an unarmed security officer grabbed Gonzales by the arm to prevent him from running away after the security officer determined that Gonzales stole a jacket. Id. at 439. In response, Gonzales "displayed a knife and waived it at the security officer . . . ." Id. The court held that Gonzales' detention was lawful and, even if it was unlawful, the record did not justify Gonzales' threat to use his knife. Id. at 440. The opinion does not address whether Gonzales raised self-defense at trial or whether such a defense could be lawfully asserted under those facts. But here, Decker, armed with both a gun and a taser, pushed Crouch two times after Crouch placed the items in a basket inside the store and before Crouch got out his knife. The facts here are distinguishable from Gonzales and Crouch was entitled to assert a self-defense claim against Decker's use of force.

Finally, Crouch argues that he was further prejudiced by defense counsel's decision to withdraw a jury instruction that described the self-defense standard applicable to shopkeepers who use force against a shoplifter. He argues that the instruction was crucial to help the jury understand whether Decker used excessive force and did not detain him in a "reasonable manner," as

9

allowed under RCW 9A.16.080. He is mistaken. The statute creates a defense against criminal liability for shopkeepers and their agents in cases where they exercise their right to detain a suspected shoplifter. It does not define "reasonable manner" nor does it create a defense to the crime of assault by a shoplifter, even where the shopkeeper uses excessive force. Because such an instruction could be confusing, defense counsel was not deficient in withdrawing it.

In conclusion, defense counsel was deficient in proposing a self-defense jury instruction that lessened the State's burden of proof and Crouch was prejudiced by that deficiency. Therefore, we reverse.

Smith, J.

WE CONCUR:

Leach, J.

Mann, ACJ