998 P.2d 321 (2000)
140 Wash.2d 456
STATE of Washington, Respondent,
v.
Jason BROWN, A/K/A Joseph Osell Palmer, Petitioner.
No. 67935-5.
Supreme Court of Washington, En Banc.
Argued January 13, 2000.
Decided May 4, 2000.
Stella B. Paterson, Richard Tassano, Amy Williams, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, Dennis McCurdy, Deputy, James Whisman, Deputy, Seattle, for Respondent.
SMITH, J.
Petitioner Jason Brown seeks review of a decision of the Court of Appeals, Division I, which affirmed his conviction in the King County Superior Court for assault in the third degree under RCW 9A.36.031(1)(g).[1] The Court of Appeals concluded that for a conviction of assault under RCW 9A.36.031(1)(g), it is not necessary for the State to prove a defendant had knowledge that the victim was a law enforcement officer *322 nor that the victim was in the performance of official duties at the time of the assault.[2] We granted review. We affirm.

QUESTION PRESENTED
The question presented in this case is whether knowledge that the victim is a law enforcement officer in the performance of official duties at the time of an assault is an implied element of the crime of assault in the third degree under RCW 9A.36.031(1)(g), thus requiring the State to charge and prove that element beyond a reasonable doubt.

STATEMENT OF FACTS
Petitioner Jason Brown, also known as Joseph Osell Palmer, was charged by second amended information in the King County Superior Court with the crime of assault in the third degree under RCW 9A.36.031(1)(g).[3] The charge arose from a "buy-bust" operation conducted by Seattle Police officers on the morning of March 10, 1995.[4]
The pertinent portion of Charge II in the second amended information stated:[5]
That the defendant JASON BROWN AKA JOSEPH OSELLI [sic] PALMER in King County, Washington, on or about March 10, 1995, did intentionally assault Officer Gregory Neubert, knowing that he was a law enforcement officer or other employee of a law enforcement agency who was performing official duties at the time of the assault;
Contrary to RCW 9A.36.031(1)(g), and against the peace and dignity of the State of Washington.
Plainclothes officer Gregory Neubert posed as a narcotics buyer outside McDonald's restaurant at Third Avenue and Pine Street in downtown Seattle.[6] He wore "[b]lack leather boots," "ripped up jeans," a "white t-shirt with some black lettering and pictures on the front" and a "green military field jacket" with a hood.[7] The jacket, when closed, concealed his police badge and service weapon.[8]
Officer Neubert testified that on the day of Petitioner's arrest, he initiated a conversation with a male person outside McDonald's and asked whether he had narcotics for sale.[9] The man accused Officer Neubert of being a "cop" and proceeded into the restaurant.[10] Officer Neubert followed the man into the restaurant and argued with him over whether Neubert was a law enforcement officer.[11] The man then walked away, remaining in McDonald's while Officer Neubert returned outside to the front of the restaurant.[12]
Officer Neubert testified that Petitioner Jason Brown approached him in front of the restaurant and asked what he was looking for.[13] He responded by asking whether Petitioner was "down," a term the officer knew was street vernacular for having narcotics.[14] According to Officer Neubert, Petitioner responded "Hell, yeah, I'm down. I got rock."[15] Officer Neubert then asked for a *323 "40," street vernacular for $40 worth of rock cocaine.[16] Petitioner told Officer Neubert to wait outside while he entered McDonald's.[17] Through a window Officer Neubert watched Petitioner sit at a table and remove a white object from a plastic bag.[18] Petitioner stood up and appeared to have a conversation with the man who had accused Officer Neubert of being a "cop."[19] Petitioner then came out of the restaurant and exchanged a white round object tightly wrapped in cellophane with Officer Neubert for two $20 bills.[20] After the exchange, Petitioner went back into McDonald's. Officer Neubert immediately placed the hood of his jacket over his head as a signal to standby officers that he had made a "good buy."[21] He briefly inspected the white round object and suspected it was "bunk," a word commonly referring to fake cocaine.[22] Officer Neubert then followed Petitioner into McDonald's to keep him in view in order to assist standby officers in making an arrest.[23] In the restaurant, Officer Neubert observed Petitioner having another conversation with the man who had accused him of being a police officer.[24] Petitioner immediately spun around to face Officer Neubert, catching him by surprise.[25] Being at a loss for words, Officer Neubert spontaneously accused Petitioner of selling him "bunk."[26]
Officer Neubert testified at trial that Petitioner responded to his accusation by unzipping his jacket, reaching inside and slowly removing what appeared to the officer to be a handgun.[27] He testified he felt "scared" and "thought the individual was going to pull the gun out and shoot" him.[28] Officer Neubert then walked slowly backward, at which point Petitioner began walking slowly toward him.[29] Officer Neubert testified he unbuttoned his coat, pulled out his service weapon and shouted "Seattle Police, drop the gun, drop it, drop it."[30] Officer Neubert's police badge which hung from a necklace became visible when he unbuttoned his coat.[31] According to Officer Neubert, Petitioner continued to walk slowly toward him, withdrawing what appeared to be a handgun and pointing it at him.[32] Officer Neubert testified he identified himself again by screaming "Seattle Police, drop the gun[!]"[33] He testified that Petitioner "made no efforts to drop the handgun [or] lower the handgun...."[34] Officer Neubert then shot Petitioner in the chest and "propelled him backwards onto the ground."[35] What the officer thought was a "handgun" was actually only a cigarette lighter designed to look like a handgun.[36] Officer Neubert testified he was nevertheless "afraid" when Petitioner pointed it at him.[37]
The case was tried before a jury in the King County Superior Court on December 13, 1995. The Honorable Linda Lau gave *324 instructions to the jury, which included the following:

[INSTRUCTION] No. 13
A person commits the crime of assault in the third degree when he assaults a law enforcement officer who was performing his or her official duties at the time of the assault or when he assaults another with intent to prevent or resist the lawful apprehension or detention of himself or another person.[38]

[INSTRUCTION] No. 14
To convict the defendant of the crime of assault in the third degree, as charged in count II, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the 10th day of March, 1995, the defendant assaulted Greg Neubert;
(2) That the defendant knew at the time of the assault that Greg Neubert was a law enforcement officer[;]
(3) That at the time of the assault Greg Neubert was a law enforcement officer or other employee of a law enforcement agency who was performing his official duties; and
(4) That the acts occurred in the State of Washington.
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to count II.
On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to count II.[[39]]

[INSTRUCTION] No. 15
An assault is an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.[[40]]
Petitioner took no exception to these instructions.[41]
During deliberations on December 22, 1995, the jury foreman submitted a written inquiry to Judge Lau referring to "Instruction # 14, Element # 2," asking "Is it third degree assault when the suspect becomes aware of the fact that the victim is a law enforcement officer at some point in the course of an assault, and is not aware of that at the initiation of an assault?"[42] Judge Lau in a written response on the inquiry form answered "You have all the jury instructions, please reread them."[43]
At the conclusion of its deliberations, the jury found Petitioner "guilty" on Count I, violation of the Uniform Controlled Substances Act, and Count II, assault in the third degree.[44] Petitioner on January 30, 1996 was given concurrent sentences of thirty-three months on each count.[45]
On February 8, 1996, Petitioner filed a notice of appeal to the Court of Appeals, Division I, challenging only his conviction for assault in the third degree.[46] He claimed the trial court erred in giving Instruction Number 14 because the "to convict" instruction did not comply with State v. Allen[47] and misstated elements of the crime under RCW 9A.36.031(1)(g).[48]
*325 The Court of Appeals, the Honorable Faye C. Kennedy writing, affirmed the conviction. The court stated that although Petitioner did not object to Instruction Number 14 at the time of trial, he could challenge it for the first time on appeal as a manifest error affecting a constitutional right.[49] The court then declined to follow State v. Allen, which states: "In addition to an intent to commit an act which constitutes an assault, ... [RCW 9A.36.031(1)(g)] requires knowledge or intent that the person assaulted was a law enforcement officer engaged in performing his official duties."[50] The court in this case concluded to the contrary that "in order to convict under RCW 9A.36.031(1)(g), the State is not required to prove that the defendant knew either that the victim was a law enforcement officer or that the victim was performing official duties at the time of the assault."[51]
Petitioner Jason Brown petitioned this Court for review of the decision of the Court of Appeals. In his petition for review, Petitioner challenged only the court's conclusion that knowledge is not an implied element of assault in the third degree under RCW 9A.36.031(1)(g).[52] Review was granted on August 31, 1999.[53]

DISCUSSION
The Washington Criminal Code[54] classifies assault into four degrees: first, second, third and fourth.[55] Assault in the third degree is defined in RCW 9A.36.031, which provides in part:
Assault in the third degree. (1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:
. . . .
(g) Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault;[[56]]
. . . .
(2) Assault in the third degree is a class C felony.
The word "assault" is not defined in the Washington Criminal Code.[57]
Petitioner claims that to be convicted under RCW 9A.36.031(1)(g), a defendant at the time of an assault must know the victim was a law enforcement officer engaged in performing official duties.[58] Respondent State of Washington argues that knowledge of the victim's status is not an implied element of the crime of assault in the third degree under RCW 9A.36.031(1)(g).[59]
The Court of Appeals, Division III, in State v. Allen relied on State v. Hopper, 118 Wash.2d 151, 153-54, 822 P.2d 775 (1992), in concluding that knowledge was an implied element of former RCW 9A.36.031(1)(f), now *326 recodified as RCW 9A.36.031(1)(g).[60] In Allen, the defendant Thomas B. Allen "hit [police officer Larry E. Rogers] in [sic] the nose."[61] The court in that case stated "An allegation of assault contemplates knowing, purposeful conduct. State v. Hopper, 118 Wash.2d 151, 822 P.2d 775 (1992)."[62] It then resorted to the statutory definition of "knowledge" and concluded:
A person acts with knowledge when he is aware of the circumstances or result described by the statute defining the offense. RCW 9A.08.010(1)(b).[[63]]
The circumstances or result described by RCW 9A.36.031(1)(g) is the assault of a law enforcement officer performing his duties at the time of the assault. In addition to an intent to commit an act which constitutes an assault, ... [RCW 9A.36.031(1)(g)] requires knowledge or intent that the person assaulted was a law enforcement officer engaged in performing his official duties.[[64]]
Under the plain meaning of RCW 9A.36.031(1)(g), knowledge that the victim was a police officer in the performance of official duties is not an element of the crime of third degree assault. The State was not required to prove such knowledge on the part of Petitioner. This notwithstanding that the State in the second amended information during the course of trial charged Petitioner with assault "knowing that [Officer Neubert] was a law enforcement officer ... performing official duties at the time of the assault." This was not necessary for third degree assault under the specific language of RCW 9A.36.031(1)(g). Under that section the State needed only to prove a criminal defendant committed an assault against another person and that the other person was a law enforcement officer performing official duties at the time of the assault. But the State need not prove the defendant knew these facts at the time of the assault.
The statement in Allen that "[i]n addition to an intent to commit an act which constitutes an assault, ... [RCW 9A.36.031(1)(g)] requires knowledge or intent that the person assaulted was a law enforcement officer engaged in performing his official duties" is not well reasoned. We conclude it is not a correct statement of the law.

JURY INSTRUCTIONS
In this case, the jury instructions included the essential elements of RCW 9A.36.031(1)(g) with respect to criminal assault. Instruction Number 13 provides in part: "A person commits the crime of assault in the third degree when he assaults a law enforcement officer who was performing his or her official duties at the time of the assault...." This language is substantially identical to the wording of RCW 9A.36.031(1)(g).
Instruction Number 15 correctly defines "assault" and includes the appropriate requirement of "intent to create in another apprehension and fear of bodily injury ... even though the actor did not actually intend to inflict bodily injury." It also includes the causation requirement that defendant's act "in fact creates in another a reasonable apprehension and imminent fear of bodily injury." Element 3 of Instruction Number 14 is consistent with the requirement under the wording of the statute that the State prove the victim was a law enforcement officer in the performance of official duties.
*327 The trial court was in error in including element 2 of Instruction Number 14, which stated it must be proved beyond a reasonable doubt "[t]hat the defendant knew at the time of the assault that Greg Neubert was a law enforcement officer." Actually the instruction was consistent with the language of the second amended information which doubtless was based upon language in State v. Allen. Even though inclusion of this element was error, it was harmless. Both Petitioner and the State acquiesced in the instruction. Neither took exception. "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result, despite the error."[65] In this case, inclusion of element 2 actually benefited Petitioner by presenting another hurdle for the State to overcome in order to convict him. The State assumed that responsibility by the language it perhaps with good intentions added to the amended information. Indeed, the jury was only concerned about this element in its written inquiry to the court during deliberations. Yet the jury found Petitioner "guilty." The testimony of Officer Neubert established that he was in apprehension and imminent fear of bodily injury because he was "scared" and "afraid." Given the stated concerns of the jury, the instructions of the court to the jury, and the testimony of Officer Neubert, a reasonable jury could have found Petitioner "guilty" even without considering element 2 of the "to convict" instruction. It is reasonable to conclude, though, that the jury did consider it. This was to the advantage of Petitioner and against the interests of the State. But the State asked for it and thus is bound by the consequences.
The primary objective of statutory interpretation is to give force to the language of a statute and carry out the intent of the Legislature.[66] The Legislature has in other statutes relating to crimes against law enforcement officers specifically required knowledge by an offender that the victim is a law enforcement officer.[67] It has not included that requirement in RCW 9A.36.031(1)(g) and is free to do so if it chooses. Until it chooses to do so, we will not read it into the statute.

SUMMARY AND CONCLUSION
The Washington Criminal Code does not include a definition of the word "assault" as used in RCW 9A.36.031(1)(g) To obtain a conviction for assault under that subsection, the State must prove that a defendant intended to commit and did commit an assault against another person. The State also must prove that (1) the victim was a law enforcement officer engaged in the performance of official duties at the time of assault. (2) the law enforcement officer had a reasonable apprehension and imminent fear of bodily injury at the time of the assault; and (3) the defendant's actions created that apprehension. But the State is not required to charge and prove that a defendant at the time of the assault knew the victim was a law enforcement officer engaged in the performance of official duties.
The trial court, while following the language of the amended information and perhaps being persuaded by State v. Allen, erroneously instructed the jury that proof of knowledge by the defendant of the victim's status was required under RCW 9A.36.031(1)(g). This was harmless error. Instruction Number 13 contains language identical to the language in RCW 9A.36.031(1)(g). Instruction Number 15 appropriately defines "assault." The testimony of Officer Gregory Neubert established that he was in apprehension and imminent fear of bodily injury. Although inclusion of the requirement of proof of knowledge in Instruction Number 14 actually benefited Petitioner by presenting another hurdle for the State to overcome in order to convict him, the jury still found him "guilty." The State was responsible for creating this hurdle.
*328 We conclude that knowledge that the victim is a law enforcement officer in the performance of official duties at the time of an assault is not an implied element of the crime of assault in the third degree under RCW 9A.36.031(1)(g). We agree with the conclusion of the Court of Appeals, Division I, that the State must prove that the victim was a law enforcement officer performing official duties at the time of the assault, but is not required to prove the defendant knew either that the victim was a law enforcement officer or that the victim was performing official duties at the time of the assault.
We affirm the decision of the Court of Appeals, Division I, which affirmed the conviction of Petitioner Jason Brown in the King County Superior Court for assault in the third degree under RCW 9A.36.031(1)(g).
GUY, C.J., ALEXANDER, TALMADGE, IRELAND, and BRIDGE, JJ., concur.
MADSEN, J. (concurring).
As a result of today's opinion, an assailant who commits an otherwise misdemeanor assault on a person he believes to be his or her compatriot in crime, may nevertheless be convicted of a felony if the victim is per chance an undercover law enforcement officer. From a deterrent and retributive perspective, I believe this is illogical and unjust. RCW 9A.36.031 was enacted by the Legislature to deter attacks on certain specified persons who are targeted by an assailant who is aware of their status. Consistent with this purpose, I would require the State to prove that an assailant knew, or reasonably should have known, that a victim was a law enforcement officer before a conviction under RCW 9A.36.031(1)(g) may lie. The jury instructions in this case adequately conveyed this statement of the law.[1] Therefore, I concur in the result of the majority.
Several states have enacted statutes providing enhanced penalties for assaults against law enforcement officers. The rationale behind these provisions is easily discerned:
These statutes have a twofold purpose: to reflect the societal gravity associated with assaulting a public officer and, by providing an enhanced deterrent against such assault, to accord to public officers and their functions a protection greater than that which the law of assault otherwise provides to private citizens and their private activities. Consonant with these purposes, the accused's knowledge that his victim had an official status or function is invariably recognized by the States as an essential element of the ... offense.
United States v. Feola, 420 U.S. 671, 698, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975) (footnotes omitted) (Stewart, J., dissenting).
In many states, an assailant's knowledge of the victim's status is expressly required by statute. See Ariz.Rev.Stat. Ann. § 13-1204(A)(5) (West 1989); Ark.Code Ann. § 5-13-202(4)(a)(A) (Michie 1997); Cal.Penal Code § 243 (West 1999); Colo.Rev.Stat. § 18-3-201 (1999); Idaho Code § 18-915 (1997); Ill. Comp. Stat. § 720, para. 5/12-2(a)(6) (1998); Iowa Code Ann. § 708.3A(1) (West Supp.2000); La.Rev.Stat. Ann. § 14:34.2 (West 1997). In others, courts have read an implied knowledge requirement into their state's statutory provisions. D.C.Code Ann. § 22-505(a) (2000); Fletcher v. United States, 335 A.2d 248, 251 (D.C.App. 1975); Nelson v. United States, 580 A.2d 114, 118 (D.C.App.1990); Me.Rev.Stat. Ann. tit. 17-A, § 752-A (West Supp.1999), State v. Morey, 427 A.2d 479 (Me.1981).
With a requirement that the assailant know the victim's status, these laws further the twin aims of criminal law: deterrence and retribution. See In re Personal Restraint of Young, 122 Wash.2d 1, 22, 857 P.2d 989 (1993) ("retribution and deterrence ... are the goals of criminal law"). Without a knowledge requirement, they do not. Indeed, I cannot "understand why an individual *329 who commits an assault on a person he does not know to be an official is any more blameworthy than one who commits an assault punishable under [a lesser assault statute] and is thus any more deserving of the greater punishment for an offense of a higher class." State v. Morey, 427 A.2d 479, 483 (Me.1981).
The majority has failed to take into account what RCW 9A.36.031 was designed to accomplish. In so doing they have disavowed the basic tenet that "[i]n interpreting a statute, th[is] court seeks to foster the purposes for which it was enacted." State v. Coyle, 95 Wash.2d 1, 5, 621 P.2d 1256 (1980) (citing In re Lehman, 93 Wash.2d 25, 27, 604 P.2d 948 (1980); Burlington N., Inc. v. Johnston, 89 Wash.2d 321, 326, 572 P.2d 1085 (1977)). RCW 9A.36.031's purpose is obvious. Assaults on law enforcement officers, and other persons acting on behalf of the public good, represent a greater affront to public order than assaults against private persons. The latter is an attack on an individual, while the former is not only a personal attack, but also an act of aggression against the very persons enlisted to secure public order, and is in this sense an attack of much broader significance and scope. As such, the former is definitely a much more serious offense, justifying its treatment as a felony. There is no doubt that one of the principal purposes of our State's criminal statutes is to "differentiate on reasonable grounds between serious and minor offenses, and to prescribe proportionate penalties for each." RCW 9A.04.020(1)(d).
Strict criminal liability is strongly disfavored in the law. State v. Bash, 130 Wash.2d 594, 925 P.2d 978 (1996). While RCW 9A.36.031 is not a pure strict liability statutethe mental element for the actus reus of assault contemplates knowing or purposeful conduct, State v. Hopper, 118 Wash.2d 151, 822 P.2d 775 (1992), State v. Wilson, 125 Wash.2d 212, 218, 883 P.2d 320 (1994)it nevertheless, under the majority's interpretation, contains a strict liability element.[2] Given the "nature of the crime as a felony and the harshness of the potential punishment, legislative intent to dispense with a mental element should be clear before the court concludes the statute defines a strict liability crime."[3]Bash, 130 Wash.2d at 610, 925 P.2d 978. The majority has failed to cite any evidence of legislative intent in this case.
Indeed, legislative intent in this case points directly to the conclusion that an assailant's knowledge of the victim's status was intended to be an element of RCW 9A.36.031. It is axiomatic that when construing a statute subject to more than one interpretation, our principal aim is to give effect to the intent of the Legislature. Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wash.2d 1, 6, 721 P.2d 1 (1986). The Legislature's intent in heightening the punishment for attacks against law enforcement officers was to deter such attacks. In the House Bill Report, this point is made clear:
A number of police officers are assaulted in the line of duty. The bill would deter assaults on police officers because the bill increases the crime to a felony offense.
H.B. Rep. 1258, at 2 (Wash.1989). Without a requirement that the assailant have knowledge of the victim's status, assaults against law enforcement officers are not deterred to any greater degree than other simple assaults.
It is also true that "[w]e presume the Legislature is familiar with past judicial interpretations of its enactments." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 789, 719 P.2d 531 *330 (1986). "The Legislature is deemed to acquiesce in the interpretation of the court if no change is made for a substantial time after the decision." State v. Coe, 109 Wash.2d 832, 846, 750 P.2d 208 (1988). Beginning with State v. Allen, 67 Wash.App. 824, 840 P.2d 905 (1992), which was decided in 1992, the courts of this state uniformly have held that knowledge of the status of the victim was a prerequisite to a third degree assault conviction. See also State v. Filbeck, 89 Wash.App. 113, 952 P.2d 189 (1997). During this period the Legislature met each year, amending RCW 9A.36.031 on four separate occasions. Laws of 1996, ch. 266, § 1; Laws of 1997, ch. 172, § 1; Laws of 1998, ch. 94, § 1; Laws of 1999, ch. 328, § 10. I believe that this, coupled with the statute's legislative history, provides a strong indication that the Legislature intended knowledge of the victim's status to be a requirement of RCW 9A.36.031(1)(g). I would so hold.
JOHNSON, and SANDERS, JJ., concur.
NOTES
[1] State v. Brown, 94 Wash.App. 327, 972 P.2d 112 (1999).
[2] Id. at 347, 972 P.2d 112.
[3] Petitioner was also charged with one count of violation of the Uniform Controlled Substances Act (VUSCA) under RCW 69.50.401(c). Clerk's Papers at 66-67. The original information filed on March 13, 1995 included Count I for VUSCA and Count II for assault in the second degree under RCW 9A.36.020(1)(f)[sic]. Id. at 1-2. On March 16, 1995, the State amended the information to change Count II to assault in the third degree under RCW 9A.36.031(1)(g). Id. at 6-7. The State again amended the information on December 20, 1995. Id. at 66-67. Petitioner made no objection to the second amended information. Report of Proceedings at 661-62.
[4] Supplemental Certification for Determination of Probable Cause, Clerk's Papers at 8.
[5] Clerk's Papers at 66.
[6] Report of Proceedings at 166.
[7] Id. at 171.
[8] Id. at 171, 200.
[9] Id. at 174.
[10] Id. at 175.
[11] Id. at 175-76.
[12] Id. at 176.
[13] Id. at 178.
[14] Id.
[15] Id.
[16] Id.
[17] Id. at 177-79.
[18] Id. at 179-80, 271.
[19] Id. at 180.
[20] Id. at 181-82.
[21] Id. at 184, 189.
[22] Id. at 162, 189, 194.
[23] Id. at 192, 194.
[24] Id. at 195, 197.
[25] Id. at 197.
[26] Id. at 197-98.
[27] Id. at 198.
[28] Id. at 199.
[29] Id. at 199-200.
[30] Id. at 200-01.
[31] Id. at 200, 335.
[32] Id. at 201.
[33] Id. at 201-02.
[34] Id. at 202.
[35] Id. In an ironic twist, Petitioner was in fact shot by Officer Neubert, the victim of the assault for which Petitioner was charged. The charged assault was totally without impact. The record does not indicate whether there was an investigation of the actual shooting by the officer.
[36] Id. at 203-04, 286-87. The actual specifications of the lighter are not indicated in the record, although the lighter was admitted in evidence.
[37] Id. at 201.
[38] Clerk's Papers at 84.
[39] Id. at 85.
[40] Id. at 86.
[41] Report of Proceedings at 774-76.
[42] Inquiry from the Jury and Court's Response, Clerk's Papers at 90.
[43] Id.
[44] Verdict Form, Clerk's Papers at 68-69; Report of Proceedings at 905.
[45] Judgment and Sentence, Clerk's Papers at 93.
[46] Clerk's Papers at 98.
[47] 67 Wash.App. 824, 840 P.2d 905 (1992).
[48] Appellant's Opening Brief at 1, 14-15.
[49] State v. Brown, 94 Wash.App. at 332, 972 P.2d 112 (citing State v. Eastmond, 129 Wash.2d 497, 502, 919 P.2d 577 (1996)); see also RAP 2.5(a)(3).
[50] 67 Wash.App. at 827, 840 P.2d 905.
[51] State v. Brown, 94 Wash.App. at 347, 972 P.2d 112.
[52] Petition for Review at 1; see also RAP 13.7(b), which provides: "If the Supreme Court accepts review of a Court of Appeals decision, the Supreme Court will review only the questions raised in the ... petition for review and the answer...."
[53] Order Granting Petition for Review, 138 Wash.2d 1008, 989 P.2d 1141 (1999).
[54] RCW 9A.04.010(1).
[55] Chapter 9A.36 RCW.
[56] RCW 9A.36.031 was enacted in 1986. Laws of 1986, ch. 257, § 6. The Washington State Legislature amended the statute in 1989 to include "[a]ssaults [of] a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault." Laws of 1989, ch. 169, § 1 (concerning H.B. 1258, 51st Leg. (1989)). Senate Journal, 51st Leg. (1989) at 892, 1092-93.
[57] See RCW 9A.04.110.
[58] Supplemental Brief of Petitioner at 5-15.
[59] Supplemental Brief of Respondent at 2-11. This argument is inconsistent with the second amended information filed by the State which charged that Petitioner "did intentionally assault Officer Gregory Neubert, knowing that he was a law enforcement officer ... who was performing official duties at the time of the assault."
[60] 67 Wash.App. at 826, 840 P.2d 905

In addition to the recodification, the Legislature amended RCW 9A.36.031 four times after State v. Allen was decided in 1992. Laws of 1996, ch. 266, § 1; Laws of 1997, ch. 172, § 1; Laws of 1998, ch. 94, § 1; Laws of 1999, CA. 328, § 1. No change was made in the wording of subsection (g).
[61] 67 Wash.App. at 825-26, 840 P.2d 905.
[62] Id. at 826, 840 P.2d 905 (emphasis added).
[63] RCW 9A.08.010(1)(b) provides: "KNOWLEDGE. A person knows or acts knowingly or with knowledge when: (i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or (ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense."
[64] State v. Allen, 67 Wash.App. at 827, 840 P.2d 905.
[65] State v. Aumick, 126 Wash.2d 422, 430, 894 P.2d 1325 (1995).
[66] State v. Wilbur, 110 Wash.2d 16, 18, 749 P.2d 1295 (1988).
[67] State v. Tunney, 129 Wash.2d, 336, 339 n. 2 917 P.2d 95 (1996); 13A SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE CRIMINAL LAW WITH SENTENCING FORMS § 305, AT 45 (2d ed. 1998).
[1] I agree with the majority's conclusion that the State need not show an assailant's knowledge that the victim is engaged in "official duties." Majority at 327. In my opinion, once an assailant has formed a reasonable belief that a victim is a law enforcement officer the assailant is on notice that the officer may be engaged in "official duties." RCW 9A.36.031(1)(g). See Lande v. Menage Ltd. Partnership, 702 A.2d 1259 (D.C.App.1997) (even off-duty police officers can be engaged in official functions).
[2] Professors LaFave and Scott appear to take a position antithetical to that of the majority. As stated in their treatise:

The distinctions now drawn between various kinds of crimes in terms of their seriousness, as reflected by the punishments provided for them, would lose much of their significance if an intent to cause any one specific type of harm would suffice for conviction as to any other type of harm which is criminal when intentionally caused.
Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 34, at 243 (1972).
[3] By the terms of the Model Penal Code (MPC), the majority's interpretation of RCW 9A.36.031 also fails. Under the MPC an assault victim's status, if included in the definition of the crime, would be considered a material element of the offense, justifying an implied mental element. 1 American Law Institute Model Penal Code §§ 1.13, 2.02 (1985).